IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| GARY A. WESLEY, | * | |
| Plaintiff | | |
| v. | * | CIVIL ACTION NO. JKB-11-2363 |
| WARDEN KATHLEEN S. GREEN, et al., | * | |
| Defendants | | |
| | *** | |

## MEMORANDUM

Defendants Warden Kathleen S. Green, Lt. Pepper, and Lt. Hancock, through counsel, have filed a dispositive motion which is construed as a motion for summary judgment. ECF No. 15. Plaintiff has responded.[1] ECF Nos. 17 & 18. Upon review of papers filed, the court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011).

## Background

Plaintiff, an inmate currently confined at the Eastern Correctional Institution ("ECI") in Westover, Maryland, alleges that on February 11, 2011, his incoming legal mail was opened outside of his presence. He states that the mail contained a DVD that defendants Pepper and Hancock seized and viewed. ECF No. 1.

According to defendants, plaintiff was transferred from the Maryland Correctional Training Center ("MCTC") to ECI on January 4, 2011. ECF No. 15, Ex. 1. Lt. Hancock avers

---

[1] Plaintiff has responded to defendants' dispositive motion (ECF Nos. 17 & 18) but has failed to provide any affidavit, even his own, to contradict defendants' version of events. Although a court may treat a verified complaint as an affidavit for purposes of summary judgment, plaintiff's complaint has not been verified. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). Any other documents the party submits may not be considered on a motion for summary judgment unless they are authenticated by either an affidavit or deposition. *See Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993). Plaintiff was given notice of his rights and responsibilities with regard to the motion for summary judgment filed against him in accordance with the requirements of *Roseboro v. Garrison. See* 528 F.2d 309, 310 (4th Cir. 1975); *see also* ECF No. 16.

that on February 9, 2011, while verifying and logging all incoming inmate legal mail, he found what felt like a CD or DVD in an envelope addressed to plaintiff. *Id.*, Ex. 2. Hancock advised Captain Barnes of the discovery. Hancock was instructed to verify whether the item was a CD or DVD and if so, to withhold it from plaintiff pending a decision from Warden Green as to whether plaintiff could possess the CD/DVD in his cell. *Id.*

That evening, plaintiff's housing unit was called to obtain its members' legal mail. When plaintiff arrived, Lt. Pepper and Hancock waited until Officer Handy gave plaintiff his mail including the envelope that contained the suspected CD/DVD. The envelope was opened in plaintiff's presence and Pepper and Hancock saw that the envelope contained a DVD from the Public Defender's Office. Hancock confiscated the DVD and informed plaintiff that he would need to obtain written approval from Warden Green before the DVD would be turned over to him. Hancock avers that he assured plaintiff that the materials would remain confidential and be secured in a safe until the following day when Hancock would give the DVD to plaintiff's case manager. *Id.*

The following day Hancock attempted to give the DVD to plaintiff's case manager, who refused to accept it. Hancock contacted plaintiff who advised that he did not want to wait for the Warden's approval.

As such, plaintiff was provided a money voucher so the DVD could be returned to the Public Defender's Office. Hancock and Pepper aver that they did not view the DVD. *Id.*, Ex. 2 & 3. Hancock further avers that he kept the DVD in his possession only for the time required for it to be determined whether plaintiff was entitled to possess it. *Id.* Ex. 2.

On February 11, 2011, plaintiff filed an Administrative Remedy Response, to which the Division of Correction refers to as an ARP, regarding the incident; he stated that the mail had

been opened outside of his presence and Pepper and Hancock had stated they were going to watch the DVD to see what it contained. *Id.*, Ex. 4. On March 17, 2011, plaintiff's ARP was found meritorious in part. The investigation determined plaintiff's legal mail had not been intentionally mishandled; however, at the time the DVD was received at ECI, there was no policy regarding the handling of CDs and DVDs in legal mail. Plaintiff was advised that since the date of the incident, the Division of Correction and ECI implemented policies regarding legal mail containing CDs or DVDs. Plaintiff was further advised that the DVD could be returned to him as the new procedures allowed him to possess it. *Id.* Ex. 4 & 5.

## Standard of Review

Summary judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility."

3

*Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Analysis

### A. Supervisory Liability

Plaintiff's complaint against Warden Kathleen Green is based solely upon the doctrine of *respondeat superior*, which does not apply in § 1983 claims. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit). Liability of supervisory officials must be "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to the knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted). Plaintiff has pointed to no action or inaction on the part of Warden Green that resulted in a constitutional injury, and

4

accordingly, his claims against her shall be dismissed.

## B. Access to courts claim

Prisoner claims regarding legal mail are typically analyzed as access to court claims. To state a constitutional claim for denial of access to the courts, a prisoner must show that the alleged shortcomings "hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Prisoners are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977); *Hudspeth v. Figgins*, 584 F.2d 1347 (4th Cir. 1978).

In *Lewis v. Casey*, the Supreme Court clarified the *Bounds* decision by finding that a deprivation of a prisoner's right of access to the courts is actionable, but only where the prisoner is able to demonstrate actual injury from such deprivation. *Lewis*, 518 U.S. at 349. The actual injury requirement, however, is not satisfied by just any type of frustrated legal claim. *Id.* at 354. Rather, the *Lewis* Court concluded that *Bounds v. Smith* stood essentially for the proposition that prisoners are not guaranteed the ability to litigate every imaginable claim they can perceive, but that they have the tools necessary "in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id.* at 354. Moreover, to state a claim that the interference with legal mail deprived him of meaningful access to the courts, a prisoner must allege adverse consequence resulting from the interference. *See White v. White*, 886 F.2d 721, 724 (4th Cir. 1989).

Certainly, the deliberate interference with a prisoner's legal mail by prison staff may state a claim of constitutional dimension. However, plaintiff's claim that on three separate occasions his incoming legal mail was opened outside of his presence fails.[2] *See Gardner v. Howard*, 109

---

[2] In his opposition to the dispositive motion, plaintiff indicates that on two other occasions legal mail was received that appeared to have been opened outside of his presence. ECF No. 17. Plaintiff's claims were investigated and no

F.3d 427, 431 (8th Cir. 1997) (isolated, inadvertent instance of prison personnel opening incoming mail marked confidential "without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation" (quoting *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990))). Moreover, occasional incidents of interference with mail do not rise to a constitutional level. *Gardner*, 109 F.3d at 430-31; *Smith v. Mashner*, 899 F.2d 940, 944 (10th Cir. 1990); *see also Pearson v. Simms*, 345 F. Supp. 2d 515, 519 (D. Md. 2003) ("[O]ccasional incidents of delay or non-delivery of mail do not rise to a constitutional level.") Nor does the mere negligent interference by correctional officials with an inmate's access to the courts state a cause of action under § 1983. *See Pink v. Lester*, 52 F.3d 73, 75-76 (4th Cir. 1995).

Here, there is no evidence that defendants acted so as to interfere with the receipt of plaintiff's mail. Further, plaintiff has shown no actual injury or specific harm, sufficient to support a claim of denial of access to the courts, suffered as a result of the disruption of his mail. There is no evidence that adverse action was taken in any of plaintiff's cases due to activity that can be tied to a failure to properly process plaintiff's mail. The only evidence plaintiff offers of injury are conclusional statements that the conduct of defendants violated his constitutional rights.

## Conclusion

For the reasons stated above, defendants' motions to dismiss or for summary judgment shall be granted. A separate order follows.

March 27, 2012
Date

James K. Bredar
United States District Judge

---

evidence was found that correctional staff was responsible for opening the mail. *Id.*